42 USCA 1983 UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**ROBERT SANDERS,**

        Plaintiff,-

CASE#1:19-CV-05525 (GHW)

-against-

AMENDED COMPLAINT

JURY TRIAL

Det. PETAR SIMONVOIC, Police officer: JOSE CINTON,
and Sergeant: JOHNSON, being sued in their individual and
official capacities,

        Defendant(s)

(1)                        **PLAINTIFF'S INFORMATION**

The name of the plaintiff is ROBERT SANDERS, who presently Resides at 802 Crescent Street apt#1 Brooklyn NY 11208

**DEFENDANT'S INFORMATION**

1. The first named defendant is Det. PETAR SIMONVOIC, shield#26955, he conducts his place of business, while under the color of law at the New York City Police Department, Bronx Narcotics Borough, located at 500 Abbot Street, Bronx NY 10470.

2. The second named defendant is Police officer JOSE CINTRON, shield# unknown, he conducts his place of business, while under the color of law at the New York City Police Department, Bronx Narcotics Borough, located at 500 Abbot Street, NY 10470.

3. The third named defendant is Sergeant JOHNSON shield# unknown, at the time of this incident, he conducted his place of business, while under the color of law at New York City Police Department, Bronx Narcotics Borough, located at 500 Abbot Street, NY 10470

(II)                     DEFENDANT'S DUTY AND OBLIGATION

4. The one named defendant PETAR COMONVOIC is a Detective for New York City Police Department, Bronx Narcotics Borough, located at 500 Abbot Bronx, New York, 10470, as a Det., while operating under the color of law, he owes a duty/obligation to use his experience to protect the citizens in his area, something he has failed to do.

5. The second defendant JOSE CINTRON was a Police Officer at the time this incident occurred, who was a Police Officer for the New York City Police Department, Bronx Narcotics Borough, located at 500 Abbot Street NY 10470, as a Police Officer, while operating under the color of the law, he owes a duty/obligation to protect the citizens in his area, something he has failed to do.

6. The third named defendant last name JOHNSON was the Sergeant at the time this incident occurred, who was a Sergeant at the New York City Police Department, Bronx Narcotics Borough, located at 500 Abbot Street Bronx, New York 10470, as a Sergeant, while operating

under the color of law, he owes a duty/obligation to be responsible for the actions of his officers, and to complete an full investigation of all complaints being alleged, while operating his duty in that area, something that he failed to do.

## JURISDICTION

(III)

7. The United States Southern District Court is authorized with original jurisdiction over all Civil matters pursuant to 28 USC sections 1331(a)(3).

## STATEMENT OF FACTS

(IV)

8. On or about the 27th day of February 2015, while the plaintiff ROBERT SANDERS, was allegedly walking up 138th street in the Bronx, on his way to his cousin's house, when he was approached by defendant's SIMONOVIC and CINTRON, who grabbed the plaintiff in a choke hold and through him against the wall.

9. When the plaintiff requested the reason for these actions, he was told by defendant CINTRON, that they observed him making a drug sale, after denying these allegations, defendant SIMONOVIC went into the plaintiff's pocket, while defendant CINTRON held him against the wall.

10. In the process of these illegal actions, they allegedly recovered several bags of crack from his left jacket pocket. After recovering the crack, both defendants physical grabbed the plaintiff and through him on the ground, thereby spitting his lip, re-injuring his back, and place a large bump on the back of his head.

11. After several complaints by the plaintiff stating that this is illegal. These defendant alleged "we are police, we have the power to do whatever we choose, but what you should worry about is the amount of time, your looking at." They then physically grabbed the

plaintiff up off the ground, and perceived to put the handcuffs on him.

12. After about twenty minutes later defendant JOHNSON came in his vehicle, got out and approached both defendants. As he approached them, the plaintiff told him what his two officers had done. His complaints went upon death ears. After telling him that what they did was wrong, he renovate the defendant's previous statement "they are my officers, I believe what they say.

13. He was then thrown in the police van and taken to 500 Abbot Street, and thrown into a cell. He informed the officers that he wished to see a doctor, because his back was serious hurting, at which time they informed him if, he was taken to the hospital, the hold process would have to start from the beginning, thereby, meaning that he would have to stay in the precinct, until the process was completed. The plaintiff decided not to go to the hospital.

14. After the process was completed, he was re-cuffed thrown into the police van, and taken to Central Booking. When he arrived at Central Booking, he informed the nurse of the situation with his back, she then gave him some aspirin to try and relieve some of the pain.

15. The next day the plaintiff saw the Judge, the plaintiff was arraigned on the charges of criminal sale of a control substance in the 4th degree and criminal possession in the third degree, bail was set at, $7,500, however, there was a surety bond also attached.

16. The plaintiff was then taken to the facility of VCBC, where he saw the doctor, and told them about his pain, they gave him some motrin, until he could have an MRI done, he also was sent to mental health, when he was diagnosed with bipolar disorder and schizophrenia, the plaintiff was ordered to take these medications in the evening.

17. While incarcerated, the plaintiff experienced several allocation in the housing unit that he was assigned. He experienced several encounters with the turtles, where he was strip searched in front of other males, thrown against the walls, etc. all because he was in the unit when the incident occurred.

18. The plaintiff was then subjected to a constant experience of being dehumanized, by being strip searched in front of other men, without knowing if they were gay or straight, before going to court.

19. On or about the 27th day of March 2015, the plaintiff appeared in court to arraign on the alleged indictment#00652. The plaintiff was charged with CSCS in the 4th and CSPS in the 4th degree. Judge Moore was the Judge that resided at the arraignment process. The then unsealed indictment#00652, and read the charges in open court, at which time he asked the plaintiff how did he plead, at which time he said on the record that he pleaded guilty to the charges alleged in the indictment. At which time he called a side bar.

20. After a brief conversation with both the plaintiff's Attorney and the District Attorney, they came to the conclusion of issuing the plaintiff a drug program. Judge Moore order that the plaintiff be sent to drug court to be approved for a drug program.

21. About two weeks later, the plaintiff was approved for Samaritan Day top Village in Queens, the plaintiff returned back to drug court where he and drug court formed a contract in reference to if he failed to complete the rules and regulations that the program authorize however, the plaintiff was then released to Samaritan in Queens, after it was determined that the plaintiff had an Honorable discharge, he was then sent to the veterans part of the program which was located 327 West 43 street New York, N.Y. 10036.

22. While in the program the plaintiff was subjected to certain injuries, most of the injuries were due to the small bunk bed. The plaintiff is about 6'6 and weighed 320, however, the bottom bunk was only 6'3 in length, this met that the plaintiff was forced to crouch like a new born baby. This created an uncomfortable situation that led to severe back pain and a ulcer of his right lower ankle. At times the pain was so excretion that the plaintiff had to be taken by an ambulance to Mount Sinai hospital from 2016 through 2017.

23. The doctor ordered that the plaintiff keep his feet elevated. In order to stop the swelling. However, the program could not fulfill this order because of the size of the bunk bed. The program understood this but they could not accommodate the hospital's order. In 2016, the plaintiff tried to work, because he had no income. So he worked temporary at ABM building maintenance. His function was operating the frat elevator. Because of the severe pain of his back and the ulcer on his right leg. The plaintiff was allowed to sit down in the frat, while operating the frat elevator. The plaintiff was employed at ABM for about six months. After him six month period the plaintiff was laid off.

24. The plaintiff then applied for Social Supplement Program. In 2017, the plaintiff went to an medical interview with the doctors for the State of New York for a physical and mental examination. While at this examination the plaintiff had so severe pain to his back, the pain ran to his legs where he had trouble bending down. After the full examination by the State. The plaintiff applied for unemployment, after filling out the application, two weeks he was approved. The plaintiff received $321.00 weekly. On or about received 2017, the plaintiff received unemployment for six months. While collecting unemployment SSI was revaluating his medical status. His six months expired on or about April. The plaintiff completed the program in October 2017.

25. During that time period the program got the plaintiff a rented room at 802 Crescent Street apt#1 Brooklyn NY 11208, through the Seps program. Understanding the plaintiff's medical condition the program order him a king size bed, this showed that they were not able to supply the medical needs that hospital authorized, so they believed that the King size bed would satisfy his and the doctor's request.

26. On or about February 2018, the plaintiff received a phone call from the program informing him that the State of New York, diagnosed him of being unable to work, due to his back and leg problems that he experience due to his medical needs not being able to be provided.

27. The plaintiff now receives SSI, due to his medical condition not being met by the program. However, as time was going on in the year of 2019, the plaintiff wanted to take the insurance Practice test to supervise for Primatica. Because the plaintiff admitted that he had a criminal record, he was informed to get a disposition for the case, it was at this time that the plaintiff was deprived of his Right to address his own medical conditions, because on or about September 9, 2016, without the plaintiff's nor the programs knowledge, the criminal case 2015BX009236/ and indictment#00652/2015 was dismissed by Judge Moore and agreed by the District Attorney Darcel Denise,to dismiss the entire case in pursuant to CPL 160.50 (1)(C) and 160.60. Thereby cancelling the agreement between drug court and the plaintiff, thereby allowing the plaintiff to leave the program on his own. Instead, he and the program was made to believe that he was still under the contract between drug court and the plaintiff, when the truth was, he legally wasn't.

28. Something to Note: Once the Judge makes a ruling to dismiss a felony case, and the Prosecutor fails to object or file an Appeal in reference to the dismissal, it is considered that the Prosecution concedes or agrees to the dismissal, thereby, eliminating all allegations alleged in the felony complaint and indictment.

29. After finding that the entire case was dismissed in 2016, without his nor the program's knowledge through the act of fraud in 2019, the plaintiff filed a 1983 Federal Suit, because he was deprive his Right to leave the program, where he could address his medical needs, which administered to the plaintiff's diagnoses by New York States medical examiner who determined that he could no longer work.

(v)                    CAUSE OF ACTION I

30. The defendant's Det. PETAR SIMONOVIC and Police Officer JOSE CINTRON from paragraphs 1 through 12, while acting under the color of law, violated the plaintiff's 4th 5th and 14th Amend. Of the Federal and State Constitutions, for failing to protect the plaintiff against unlawful searches and seizure.

    (A) This occurred, when these defendants physically threw the plaintiff against the wall, went in his pocket without reasonable nor probable cause, could proof of this be shown through the dismissal.

    Defendant Sergeant JOHNSON from 1 through 13, violated the plaintiff's 4th 5th and 14th Amend. Of the Federal and State Constitutions, while acting under the color of law, failed to protect the plaintiff against unlawful searches and seizure.

    (B) This occurred, when this defendant authorized the handcuff and arrest of the plaintiff, and failed to investigate and chastise his officers for stopping, searching and arresting the plaintiff without any proof of reasonable nor probable cause, proof of this can be shown through the dismissal.

## CAUSE OF ACTION

31. The defendants Det. PETAR SIMONVIC, Police Officer: JOSE CINTRON and sergeant JOHNSON from paragraph 1 through 14, violated the plaintiff's 5th, 8th and 14th Amend. Of the Federal and State Constitution, while acting under the color of law, intentionally subjected the plaintiff to cruel and usual punishment.

    (A) This occurred, when defendants SIMONOVIC and CINTRON abused their power by acting together to assault, arrest and imprisonment the plaintiff without any proof of reasonable nor probable cause. This could be proven through the dismissal.

    (B) This occurred, defendant JOHNSON refused to investigate and chastise these defendants for assaulting, arresting and imprisoning the plaintiff without any reasonable nor probable cause. This could be proven through the dismissal.

(VI)
## DAMAGES

32. Due to the medical events that occurred because of the 4th, 5th, 8th and 14th Amends. Violation of these three defendants, the plaintiff is request compensatory damages for each defendant in the amount of $2,000,000.00 dollars each, due to the plaintiff being diagnosed as disable to work.
33. $100,000.00 for punitive damages for each defendant separate: Det. PETAR SIMONVIC $100,000.00 for his illegal assault and battery, along with Police Officer: JOSE CINTRON who also is being charged $100,000.00 and Sergeant JOHNSON in the amount of $200,000.00 for his failure to investigate and reprimand his officers.

34. The total amount of damages being requested is in the sum amount $6,400,000.

*[signature]*