UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                              :

ROBERT SANDERS,                     :
                              :
              Plaintiff,       :

                        :        19-cv-5525 (LJL)
       -v-                   :
                        :        OPINION AND ORDER
PETAR SIMONOVIC, JOSE CINTRON, and RICHARD :
JOHNSON,                   :
                        :
             Defendants.     :
                        :
-------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__2/23/2021__

LEWIS J. LIMAN, United States District Judge:

      Defendants Petar Simonovic ("Simonovic") and Jose Cintron ("Cintron")[1] move,

pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the Amended Complaint against them.  For the

following reasons, the motion is granted.

## BACKGROUND

      The following facts are taken from the Amended Complaint, Dkt. No. 11 ("AC"), and the

documents incorporated therein, and are assumed to be true for purposes of this motion.[2]

      On February 27, 2015, Plaintiff Robert Sanders ("Sanders" or "Plaintiff") was arrested in

the Bronx by Defendants Simonovic and Cintron, who are employed at the New York Police

Department ("NYPD").  AC ¶ 8.  The following day, he was arraigned in New York state court

in Bronx County on charges of criminal sale of a controlled substance in the fourth degree and

criminal possession of a controlled substance in the third degree.  *Id.* ¶ 15.[3]

---

[1] Simonovic and Cintron are named as Detective Petar Simonvoic and Police Officer Jose
Cinton, respectively, in the Amended Complaint.

[2] The initial complaint in this action was filed on June 13, 2019.  *See* Dkt. No. 2.

[3] Plaintiff's arrest report reflects that he was arrested on February 25, 2015 and was charged with
four felonies: criminal possession of a controlled substance in the third degree, criminal sale of a

Plaintiff alleges that he had been walking on 138th Street en route to his cousin's house when he was arrested. *Id.* ¶ 8. He was approached by Simonovic and Cintron who grabbed him and placed him in a chokehold and threw him against a wall. *Id.* Cintron told Plaintiff that he was observed making a drug sale. *Id.* ¶ 9. When Plaintiff denied the allegations, Simonovic went into Plaintiff's pocket while Cintron held Plaintiff against the wall. *Id.* The officers allegedly recovered several bags of crack cocaine from Plaintiff's left jacket pocket. *Id.* ¶ 10. They then physically "grabbed" Plaintiff and threw him to the ground, re-injuring Plaintiff's back, splitting his lip, and giving him a "large bump on the back of his head." *Id.* Plaintiff complained and the officers responded, "[W]e are the police, we have the power to do whatever we choose, but what you should worry about is the amount of time, your [sic] looking at." *Id.* ¶ 11. Plaintiff was lifted from the ground and handcuffed. *Id.*

The third defendant in this action, Richard Johnson ("Johnson"), is alleged to be a Sergeant with the NYPD. *Id.* ¶ 3.[4] About twenty minutes after Plaintiff was handcuffed, Johnson arrived at the scene. *Id.* ¶ 12. Plaintiff told Johnson what the two officers had done, but his complaint went on "dea[f] ears." *Id.* Johnson told plaintiff, "they are my officers, I believe what they say." *Id.* Plaintiff was taken to the precinct but when he told the officers that his back was hurting, he was informed that if he was taken to the hospital, the process "would have to start from the beginning." *Id.* ¶ 13. He chose not to go to the hospital and was taken to central booking where he was given aspirin to relieve the pain. *Id.* ¶ 14.

---

controlled substance in the third degree, criminal possession of a narcotic drug in the fourth degree, and criminal possession of a controlled substance in the fourth degree. Dkt. No. 36-2. The difference is immaterial to this decision.

[4] Johnson has not been served with the Amended Complaint and the Court does not discuss or dispose of the claims against him.

Plaintiff was arraigned on February 28, 2015 and bail was set at $7,500.  *Id.* ¶ 15.  He alleges that while he was incarcerated, he experienced several altercations, specifically that he was strip-searched in front of the other male prisoners and was "thrown against the wall" by a patrol unit.  *Id.* ¶¶ 17-18; Dkt. No. 45 at 9.[5]

On or about March 27, 2015, Plaintiff was arraigned on an indictment charging him with criminal sale of a controlled substance in the fourth degree and criminal possession of a controlled substance in the fourth degree.  AC ¶ 19.[6]  He pleaded guilty and was sent to a drug court to be approved for a drug treatment program.  *Id.* ¶¶ 19-20.[7]  About two weeks later, he was approved for the Samaritan Day Top Village in Queens, New York, under a contract that required him to comply with the rules and regulations of the program.  *Id.* ¶ 21.  He resided there for two weeks before he was sent to the veterans facility at Samaritan Day Top Village, located at 327 West 43rd Street in Manhattan, which is where he resided for the completion of the program.  Dkt. No. 45 at 10.  At some point in 2017, the program secured for Plaintiff a rented room in Brooklyn and purchased a king bed for his medical needs.  AC ¶ 25; Dkt. No. 45 at 10-11.

On or about September 9, 2016, the criminal case and indictment against Plaintiff were dismissed pursuant to New York Criminal Procedure Law §§ 160.60 and 160.50(1)(C).  AC

---

[5] "[W]here a pro se plaintiff has submitted other papers to the Court, such as legal memoranda, the Court may consider statements in such papers to supplement or clarify the plaintiff's pleaded allegations."  *Sommersett v. City of New York*, 2011 WL 2565301, at *3 (S.D.N.Y. June 28, 2011).

[6] The court records reflect that Plaintiff was indicted on March 10, 2015 on charges of criminal possession of a controlled substance in the third degree, fourth degree, and seventh degree.  Dkt. No. 36-4.

[7] Although Plaintiff alleges that his guilty plea occurred in March 2015, court records reflect that he pleaded guilty on September 4, 2015 to a single charge of criminal possession of a controlled substance in the third degree.  Dkt. No. 36-3.

¶ 27; *see also* Dkt. No. 45, Ex. A.  However, he was not informed of the dismissal and continued to participate in the program until 2018.  AC ¶ 27; Dkt. No. 45 at 10-11.  While he resided at the veterans facility at Samaritan Day Top Village in Manhattan and before he moved to Brooklyn, Plaintiff suffered an injury to his back and an injury to his lower ankle as a result of being forced to sleep in a small bunk bed that was smaller than Plaintiff's frame.[8]  AC ¶ 27; Dkt. No. 45 at 10-11.  Plaintiff has not been able to work and now receives social security "due to his medical condition not being met by the program."  AC ¶ 27.  In addition, as a result of his criminal conviction, he has not been able to take the insurance practice test that he would need to take for future employment.  *Id.*

After his release from the program, and while he was attempting to secure a job, Plaintiff went to the Bronx Supreme Court to locate the record of his cases.  Unable to find such a record, he ordered a certificate of disposition.  It was then, on May 9, 2019, that he learned that his case had been dismissed on September 9, 2016.  The note by the state court on September 9, 2016 wrote "program completed" under "disposition other than conviction or acquittal."  Dkt. No. 36-3.

Plaintiff brings claims against Simonovic and Cintron for conducting an unlawful search and seizure without reasonable or just cause in violation of Plaintiff's rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.  AC ¶ 30.  He also alleges that Simonovic and Cintron assaulted him, caused his false arrest and malicious prosecution, and subjected him to cruel and unusual punishment in violation of the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.  *Id.* ¶ 31.  He seeks actual damages for the

---

[8] Plaintiff is about 6'6" and weighs 320 pounds and the bunk bed was only 6'3" in length.  AC ¶ 22.

medical injuries he suffered, *id.* ¶ 32, and punitive damages for "illegal assault and battery," *id.* ¶ 33.

## PROCEDURAL HISTORY

Plaintiff filed a complaint in this Court on June 13, 2019, naming three John Doe defendants.  Dkt. No. 2.  He was granted permission to proceed *in forma pauperis* on June 25, 2019.  Dkt. No. 3.  On June 28, 2019, the Court issued a *Valentin* order, *see Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997), directing the New York City Law Department ("NYCLD") to identify for Plaintiff the John Doe defendants whom Plaintiff sought to sue and their service addresses, and directing Plaintiff to file an amended complaint within thirty days of receiving the information.  Dkt. No. 5.  On October 1, 2019, Plaintiff filed his Amended Complaint naming Simonovic, Cintron, and Johnson.  Dkt. No. 11.

After Simonovic and Cintron were served[9] and after Defendants received extensions of time to answer or move against the Complaint, Dkt. Nos. 27, 29-30, 34, Defendants moved to

---

[9] The Court has asked the NYCLD several times to provide the proper service address of Johnson.  After Plaintiff wrote to the Court requesting assistance in procuring Johnson's first name and service address on September 19, 2020, the Court ordered the NYCLD to inform Plaintiff of Johnson's service address by October 4, 2019.  Dkt. No. 10.  The Court granted an extension of that deadline until October 18, 2019, on which date the NYCLD provided a home address for Johnson.  Dkt. No. 13; Dkt. No. 14.  However, the U.S. Marshals Service was unable to execute service as the occupant of the residence at the address provided said Johnson had sold the residence in April 2019.  Dkt. No. 18.  The Court then ordered NYCLD to provide the proper service address for Johnson by February 24, 2020, Dkt. No. 20, and the NYCLD provided an employment address for Johnson at 1 Police Plaza.  Dkt. No. 22.  The Court directed the U.S. Marshals Service to effect service on Johnson, but such service was not attempted until November 2020 due to logistical delays caused by COVID-19.  Dkt. No. 24.  When such service was attempted on November 4, 2020, the server was told that Johnson was no longer at 1 Police Plaza but could be located instead at Floyd Bennet Field.  Dkt. No. 47.  The Court ordered the NYCLD to, again, provide a service address for Johnson by February 1, 2021.  Dkt. No. 48.  The NYCLD "has confirmed with NYPD legal representatives that the service address previously provided for Sergeant Johnson is, and remains, the correct service address."  Dkt. No. 49.  The Court thus directed the U.S. Marshals to effect service once again.  Dkt. No. 50.  As of the date of this Opinion and Order, Johnson has not yet been served.

dismiss on June 8, 2020.  Dkt. No. 35.  The Court ordered that Plaintiff respond to the motion to

dismiss by July 9, 2020, Dkt No. 39, but because Plaintiff wrote that he had not received the

motion to dismiss, Dkt. No. 40, the Court extended Plaintiff's time to respond to August 28,

2020, Dkt. No. 42.[10]  Plaintiff filed his opposition to the motion to dismiss on August 4, 2020.

Dkt. No. 45.  Defendants filed their reply on September 18, 2020.  Dkt. No. 46.

## LEGAL STANDARDS

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept the

material facts as alleged in the complaint as true and construe all reasonable inferences in the

plaintiff's favor."  *Phelps v. Kapnolas*, 308 F.3d 180, 184 (2d Cir. 2002) (citing *Hernandez v.*

*Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994)).  However, "[t]o survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)).  When adjudicating a motion to dismiss under Rule

12(b)(6), the court considers not only the well-pleaded allegations of the complaint but

documents incorporated by reference and "matters of which judicial notice may be taken."

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *see Gray v. Wesco Aircraft*

*Holdings, Inc.*, 454 F. Supp. 3d 366, 382-83 (S.D.N.Y. 2020).  The Second Circuit has held that

the "prosecution of [an individual] is a matter of public record, of which [a court] take[s] judicial

notice."  *Shmueli v. City of New York*, 424 F.3d 231, 233 (2d Cir. 2005).  Thus, on motions to

dismiss, "courts have taken judicial notice of criminal court certificates of disposition," *Forbes v.*

*City of New York*, 2016 WL 6269602, at *4 (S.D.N.Y. Oct. 26, 2016) (citing cases), as well as of

other court filings, including guilty plea minutes, sentence and commitment forms, and true bills

---

[10] Defendants wrote to the Court that they had mailed the motion to dismiss to Plaintiff on June
11, 2020, but agreed to resend the relevant filings to Plaintiff.  Dkt. No. 41.

of indictment, if their authenticity is not challenged, *see Magnotta v. Putnam Cnty. Sheriff*, 2014 WL 705281, at *3 (S.D.N.Y. Feb. 24, 2014).

The Court is obligated to construe *pro se* pleadings broadly and liberally, interpreting them so as to raise the strongest arguments they suggest. *See Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 146 (2d Cir. 2002); *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000).  This obligation "is especially true when dealing with *pro se* complaints alleging civil rights violations." *Weixel*, 287 F.3d at 146; *see Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001).  However, while the Court construes *pro se* pleadings liberally, this does not relieve *pro se* plaintiffs of the requirement that they plead enough facts to "nudg[e] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  Nor does it relieve them of the obligation to otherwise comply with the pleading standards set forth by the Federal Rules of Civil Procedure. *Saidin v. N.Y.C. Dep't of Educ.*, 498 F. Supp. 2d 683, 687 (S.D.N.Y. 2007); *see Locicero v. O'Connell*, 419 F. Supp. 2d 521, 525 (S.D.N.Y. 2006) (requiring that *pro se* litigants allege sufficient facts to indicate deprivation of a constitutional right).

## DISCUSSION

Defendants argue that the Amended Complaint should be dismissed because Plaintiff's claims for use of excessive force, unlawful search, false arrest, and malicious prosecution are all barred by the statute of limitations.  Dkt. No. 37 at 5-6.  They also argue that the malicious prosecution claim fails as a matter of law because Plaintiff has not alleged that the prosecution terminated favorably for him, *id.* at 7-9, and that Plaintiff has failed to allege a claim for cruel and unusual punishment against them, *id.* at 9-10.

### A.      Statute of Limitations

Defendants first argue that all of Plaintiff's claims (save for the cruel and unusual punishment claim) are barred by the statute of limitations.

"Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014) (citation omitted); *see also Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989) ("Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss."). If it appears from a complaint that the claims are *prima facie* time-barred, the burden is on the plaintiff to "plausibly alleg[e] that they fall within an exception to the applicable statute of limitations." *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 436 (S.D.N.Y. 2014) (citing cases).

"Section 1983 does not provide a specific statute of limitations. Thus, courts apply the statute of limitations for personal injury actions under state law." *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013). "The statute of limitations for § 1983 actions arising in New York is three years." *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 308 (2d Cir. 2020); *see Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009). At the same time, however, "[f]ederal law determines when a § 1983 cause of action accrues." *Hogan*, 738 F.3d at 518 (excessive force; quoting *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002)); *see Wallace v. Kato*, 549 U.S. 384, 388 (2007) (false arrest and false imprisonment); *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980) (false arrest and assault. "[I]t is 'the standard rule that [accrual occurs] when the plaintiff has a complete and present cause of action,' that is, when 'the plaintiff can file suit and obtain relief.'" *Wallace*, 549 U.S. at 388 (quoting *Bay Area Laundry & Dry*

*Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)).  Section 1983

claims generally accrue when a plaintiff knows or has reason to know of the injury that is the

basis of the claim.  *Hogan*, 738 F.3d at 518.

### 1.    Malicious Prosecution

Defendants argue that Plaintiff's malicious prosecution claim accrued on the date of his

guilty plea, which Defendants put at September 4, 2015.  However, "a § 1983 cause of action for

damages attributable to an unconstitutional conviction or sentence does not accrue until the

conviction or sentence has been invalidated."  *Heck v. Humphrey*, 512 U.S. 477, 489-90 (1994).

Thus, "[i]n malicious prosecution suits under Section 1983, the statute of limitations begins to

run when the prosecution terminate[s] in the plaintiff's favor.'"  *Spak v. Phillips*, 857 F.3d 458,

462 (2d Cir. 2017).  A "favorable termination" does not occur until the prosecution against the

plaintiff has "conclusively" ended.  *See Murphy v. Lynn*, 53 F.3d 547, 548 (2d Cir. 1995); *see*

*Thompson v. Rovella*, 734 F. App'x 787, 789 (2d Cir. 2018) ("'[T]he prosecution terminates in

the plaintiff's favor,' . . . when 'the prosecution against the plaintiff has conclusively ended,'

such that 'the underlying indictment or criminal information has been vacated and cannot be

revived.'") (quoting *Spak*, 857 F.3d at 462, 464).

Plaintiff's guilty plea thus did not start the clock running on his claim of malicious

prosecution.  That plea, although it resulted in a judgment, did not result in a termination of the

proceedings in plaintiff's favor.  The criminal case did not terminate and his malicious

prosecution claim did not ripen until September 9, 2016 at the earliest, the date that the state

court judge entered an order dismissal the case against him and all criminal charges pursuant to

New York Criminal Procedure Law § 160.60.[11]  *See* N.Y. Crim. P. L. § 160.60 (stating that "the

---

[11] That September 9, 2016 represents the date of "favorable termination" under federal common
law for accrual purposes does not resolve whether that date constitutes favorable termination

arrest and prosecution shall be deemed a nullity and the accused shall be restored, in

contemplation of law, to the status he occupied before the arrest and prosecution"); *see also*

*McClanahan v. Kelly*, 2014 WL 1317612, at *4 n.6 (S.D.N.Y. Mar. 31, 2014) (malicious

prosecution claim accrued when the charges were dismissed pursuant to N.Y. Crim. P. L.

§ 160.60).  Plaintiff filed his complaint within three years of the date of that disposition.

Accordingly, Plaintiff's malicious prosecution claim is timely.

### 2.    Remaining Section 1983 Claims

A different result follows for Plaintiff's remaining Section 1983 claims.

The clock for a claim of excessive force "starts running 'when the use of force

occurred.'"  *Jennings v. Municipality of Suffolk Cnty.*, 2013 WL 587892, at *4 (E.D.N.Y. Feb.

13, 2013) (Bianco, J.) (quoting *Fairley v. Collins*, 2011 WL 1002422, at *3 (S.D.N.Y. Mar. 15,

2011)); *see also Forbes*, 2016 WL 6269602, at *3.  "An unlawful search claim 'accrues at the

time of the search.'"  *Forbes*, 2016 WL 6269602, at *3 (quoting *McClanahan*, 2014 WL

1317612, at *4).  "[T]he statute of limitations upon a § 1983 claim seeking damages for a false

arrest in violation of the Fourth Amendment, where the arrest is followed by criminal

proceedings, begins to run at the time the claimant becomes detained pursuant to legal process."

*Wallace*, 549 U.S. at 397.  "Once the victim becomes held *pursuant to such process*—when, for

example, he is bound over by a magistrate or arraigned on charges," the tort of false arrest or

---

under state law on the merits.  "The fact that the accrual of Section 1983 claims is analyzed
under federal common law, while the merits of those claims are analyzed under the law of the
state where the tort occurred, has led to some confusion concerning the standards used to define
a 'favorable termination' in the malicious prosecution context. This is because a malicious
prosecution claim accrues when the underlying prosecution terminates in favor of the accused,
but 'favorable termination' is also a substantive element of a state law tort claim. While the same
phrase—'favorable termination'—is used in both the accrual analysis and the merits analysis of a
Section 1983 suit, it is analyzed under a different legal standard in each context. . . . What
constitutes a 'favorable termination' may turn out to be the same in each context, but not
necessarily so."  *Spak*, 857 F.3d at 462 (internal citations omitted).

false imprisonment comes to an end, and "any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than the detention itself." *Id.*

Plaintiff's claims for excessive use of force, unlawful search, and false arrest all are time-barred. Plaintiff claims that he was subjected to excessive force, unlawful search, and false arrest, on or about February 27, 2015. AC ¶¶ 8-14. He alleges that he was arraigned, and thus detained by virtue of legal process, the following day. *Id.* ¶ 15. For his excessive force and unlawful search claims to be timely, he would have had to file the complaint in this action three years after the alleged incident on February 27, 2015. For his false arrest claim to be timely, he would have had to file three years after his arraignment on February 28, 2015. Plaintiff did not file the complaint in this action until more than four years later, on June 13, 2019. *See* Dkt. No. 2. Those claims thus are barred by the statute of limitations. *See, e.g.*, *Wallace*, 549 U.S. at 389-90. *Jennings*, 2013 WL 587892, at *5.

Plaintiff's claim of deliberate indifference to his medical treatment before arraignment and claims of excessive force and an invasive strip search during pre-trial detention are also time-barred.[12] *See Miles v. City of New York*, 2018 WL 3708657, at *10 (S.D.N.Y. Aug. 3, 2018) ("A claim of deliberate indifference of medical needs brought under 1983 accrues when medical treatment is denied."); *accord Traore v. Police Office Andrew Ali Shield*, 2016 WL 316856, at *5 (S.D.N.Y. Jan. 26, 2016); *see also Jennings*, 2013 WL 587892, at *4; *Forbes*, 2016 WL 6269602, at *3. Plaintiff alleges that he complained about his back hurting on February 27, 2015 and February 28, 2015. AC ¶¶ 13, 15. He further alleges that, at some point

---

[12] As discussed herein, the Court liberally construes the allegations as pleading a claim of deliberate indifference to Plaintiff's medical needs, a claim for excessive force during pre-trial detention, and a claim for an unlawful search during pre-trial detention.

before his arraignment on March 27, 2015, he was thrown against a wall by a patrol unit at the

detention center and was strip-searched in front of other males.  *Id.* ¶ 17.  Each of these alleged

injuries occurred more than four years before the filing of this action.

Plaintiff argues that the statute of limitations on these civil rights claims did not begin

running until May 9, 2019 when he learned that his case had been dismissed.  But "[n]ot every

§ 1983 claim that arises out of a criminal case requires that the underlying criminal process reach

a favorable termination. . . . many violations of constitutional rights, even during the criminal

process may be remedied without impugning the validity of a conviction."  *Smith v. Campbell*,

782 F.3d 93, 101 (2d Cir. 2015) (quoting *Poventud v. City of New York*, 750 F.3d 121, 132 (2d

Cir. 2014)).  Plaintiff's claims were not dependent on dismissal of his criminal case because

Plaintiff could have brought such claims regardless of the outcome of his criminal case.  For

example, his false arrest claim pertains to whether the arrest itself at that moment was

unlawful.[13]  *See Wallace*, 549 U.S. at 390 (stating that damages for a false arrest claim "cover the

time of detention up until issuance of process or arrangement") (citation omitted).  A rule stating

that accrual could not start "until [a] conviction occurs and is set aside" must be rejected "in the

context of an action for false arrest" because it "would require courts and litigants 'to speculate

about whether a prosecution will be brought, whether it will result in conviction, and whether the

pending civil action will impugn that verdict—all this at a time when it can hardly be known

what evidence the prosecution has in its possession.'"  *McDonough v. Smith*, 139 S. Ct. 2149,

2159 (2019) (quoting *Wallace*, 549 U.S. at 393); *see a*lso *Poventud*, 750 F.3d at 132 ("When a

---

[13] To establish a false arrest claim under New York law, a plaintiff must show that: "(1) the
defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement,
(3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise
privileged."  *Liranzo v. United States*, 690 F.3d 78, 95 (2d Cir. 2012).

plaintiff is unlawfully arrested without probable cause, his § 1983 claim accrues before any conviction."); *Steinbergin v. City of New York*, 2021 WL 396690, at *3-4 (S.D.N.Y. Feb. 4, 2021) ("[F]alse arrest and false imprisonment claims accrue as soon as the plaintiff is detained pursuant to legal process.").

Having experienced the events that gave rise to a complete cause of action, it was incumbent on Plaintiff to sue three years later.  Having failed to do so, and having failed to present "some extraordinary circumstance [that] stood in his way and prevented timely filing" so as to warrant equitable tolling, his Section 1983 claims based on excessive force, unlawful seizure, and false arrest are now untimely.  *Menominee Indian Tribe of Wisconsin v. United States*, 136 S. Ct. 750, 755 (2016) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)); *see Barnes v. City of New York*, 2020 WL 6947424, at *3 (S.D.N.Y. Nov. 25, 2020) (declining to apply equitable tolling where plaintiff did not file his complaint "because he believed, incorrectly, that the cause of action would not accrue until the criminal proceedings had terminated in his favor").

### B.    Claims Related to Arrest and Pre-Trial Detention

#### 1.    Malicious Prosecution

Defendants move to dismiss Plaintiff's malicious prosecution claim on two independent, but related, grounds.  Defendants argue that Plaintiff's claim would invalidate his conviction in violation of the rule of *Heck*.  Defendants also argue that Plaintiff has not pleaded the elements of a malicious prosecution claim under state law necessary for him to obtain relief under Section 1983.

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, and must establish the elements of a malicious prosecution claim under state law." *Manganiello v. City of New York*,

612 F.3d 149, 160-61 (2d Cir. 2010).  "To establish a malicious prosecution claim under New

York law, a plaintiff must prove '(1) the initiation or continuation of a criminal proceeding

against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause

for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.'"

*Id.* (quoting *Murphy*, 118 F.3d at 947); *see also Heck*, 512 U.S. 477, 485 (1994) ("One element

that must be alleged and proved in a malicious prosecution action is termination of the prior

criminal proceeding in favor of the accused.").

In addition, "in order to recover damages for allegedly unconstitutional conviction or

imprisonment, or for other harm caused by actions whose unlawfulness would render a

conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has

been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal

authorized to make such determination, or called into question by a federal court's issuance of a

writ of habeas corpus."  *Heck*, 512 U.S. at 486-87; *see Tankleff v. County of Suffolk*, 2017 WL

2729084, at *19 (E.D.N.Y. June 23, 2017) ("*Heck* operates as a bar to section 1983 malicious

prosecution claims unless the conviction or sentence has been invalidated by one of the four

methods specified by the Supreme Court.").  "A claim for damages bearing that relationship to a

conviction or sentence that has *not* been so invalidated is not cognizable under § 1983."  *Heck*,

512 U.S. at 487; *see Johnson v. N.Y.C. Police Dep't*, 651 F. App'x 58, 60 (2d Cir. 2016).  In

other words, *Heck* bars a malicious prosecution claim from proceeding where it would invalidate

the criminal conviction.[14]

---

[14] Defendants also seek to apply the *Heck* bar to Plaintiff's false arrest claim, arguing that his guilty plea is equivalent to a conviction and relying on *Harley v. Suffolk County Police Dep't.*, 2012 WL 642431, at *7 (E.D.N.Y. Feb. 28, 2012) and *Magnotta*, 2014 WL 705281, at *5.  *See* Dkt. No. 37 at 7-8.  But *Harley* was rendered before the Second Circuit's decisions in *Poventud* and *Smith*, and *Magnotta*, though rendered just after *Poventud*, did not address it.  In *Poventud*,

These two requirements share in common the requirement that a plaintiff demonstrate that the state court proceedings were terminated in his favor.  "In the context of § 1983 malicious prosecution cases, *Heck*'s bar is coextensive with the favorable termination requirement." *Poventud*, 750 F.3d at 131; *see McDonough*, 139 S. Ct. at 2156 ("[F]avorable termination is both relevant and required for a claim analogous to malicious prosecution[.]"); *Goldring v. Donawa*, 2019 WL 4535507, at *3 (E.D.N.Y. Sept. 19, 2019) ("A § 1983 malicious prosecution claim is 'properly *Heck*-barred (despite the fact that the initial conviction was vacated)' absent a favorable termination.") (quoting *Poventud*, 750 F.3d at 132).  The element that the proceeding must have terminated in a plaintiff's favor is not to be understood in the vernacular but is a legal term of art.  There are many ways that a criminal proceeding can terminate in a manner that the accused, reasonably, would believe to be favorable.  But in law, and for purposes of a malicious prosecution claim, the term refers to just one type: "Proceedings are 'terminated in favor of the accused' only when their final disposition is such as to indicate the accused is not guilty." *Singleton*, 632 F.2d at 194; *accord DiBlasio v. City of New York*, 102 F.3d 654, 658 (2d Cir. 1996) (same).

In particular, "if the outcome 'was the result of a compromise to which the accused agreed, or an act of mercy requested or accepted by the accused . . . it is not a termination in favor of the accused for purposes of a malicious prosecution claim.'"  *Posr v. Court Officer Shield #207*, 180 F.3d 409, 418 (2d Cir. 2002) (quoting *Murphy*, 118 F.3d at 949); *see also Cantalino v. Danner*, 754 N.E.2d 164, 167 (2001) ("[I]f a prosecution ends because of a compromise with the accused, the termination is not favorable.  The same rule applies if charges

---

the Second Circuit specifically listed the following claims as not implicating *Heck*: (1) use of excessive force; (2) unlawful arrest without probable cause; and (3) unreasonable searches. *Poventud*, 750 F.3d at 132.

are dismissed out of mercy, since mercy presupposes the guilt of the accused."). Here, the public record indicates that Plaintiff's criminal case was dismissed due to completion of the drug treatment program. *See* Dkt. No. 36-3. That dismissal does not constitute a "termination in favor of the accused."

Pre-*Heck* precedent in this Circuit is also illustrative. In *Singleton*, for example, the Second Circuit held that a plaintiff whose criminal case was dismissed in its entirety after an adjournment in contemplation of dismissal under New York Criminal Procedure Law § 170.55 could not thereafter pursue a claim for malicious prosecution. The dismissal under Section 170.55 had not been "premised upon an explicit or implicit admission of guilt." *Singleton*, 632 F.2d at 197 (Weinstein, J., dissenting.). Nevertheless, the Second Circuit held the dismissal was not "in favor" of the accused in the eyes of the law because it did not indicate that the accused was not guilty but rather "le[ft] open the question of the accused's guilt." *Id.* at 193 ("An adjournment in contemplation of dismissal, like a consent decree, involves the consent of both the prosecution and the accused and leaves open the question of the accused's guilt."). The Second Circuit noted that the hiatus between adjournment and dismissal and the "behavioral requirements which the defendant must meet during the adjournment period in order to avoid having the case restored to the calendar, confirm[ed] that an adjournment in contemplation of dismissal is far from being 'in all respects favorable to the defendant.'" *Id.* at 194; *see e.g.*, *Wheeler v. Kolek*, 2020 WL 6726947, at *7 (S.D.N.Y. Nov. 16, 2020) (proceeding did not terminate in plaintiff's favor when he received an adjournment in contemplation of dismissal).

The Second Circuit reached a similar conclusion in *Roesch v. Otarola*, 980 F.2d 850 (2d Cir. 1992). There, participation in Connecticut's accelerated pretrial rehabilitation program would result in dismissal of the charges against an accused and all records of the charges erased

if the accused met the conditions set by a court.  *Id.* at 853.  The principal difference between the Connecticut statute in *Roesch* and the New York statute in *Singleton* was that admission to the program in Connecticut was not conditioned on the consent of the prosecutor; a court could grant admission to the program without the agreement of all parties.  *Id.*  The programs shared in common, however, that they did not require a guilty plea.  In holding that a disposition pursuant to the Connecticut statute "was not a termination in the appellant's favor," the Second Circuit extended the reasoning of *Singleton* to the Connecticut statute: "If we permit a criminal defendant to maintain a section 1983 action after taking advantage of accelerated rehabilitation, the program, intended to give first-time offenders a second chance, would become less desirable for the State to retain and less desirable for the courts to use because the savings in resources from dismissing the criminal proceeding would be consumed in resolving the constitutional claims."  *Id.*  The Second Circuit thus concluded: "A person who thinks there is not even probable cause to believe he committed the crime with which he is charged must pursue the criminal case to an acquittal or an unqualified dismissal, or else waive his section 1983 claim."  *Id.*

Under these precedents, the termination of Plaintiff's case thus was not favorable to him and does not permit him to maintain a malicious prosecution claim.  The proceeding against him was not adjourned or diverted prior to a determination of guilt.  Plaintiff's case is weaker than the plaintiff in *Roesch*; unlike in *Roesch*, Plaintiff here was required to plead guilty in order to be admitted to the drug treatment program.  AC ¶ 20.  The outcome of dismissal "was the result of a compromise to which the accused agreed," and was "an act of mercy requested or accepted by the accused."  *Posr*, 180 F.3d at 418.  It did not leave open the question of his guilt.  It was made possible by his admission of his guilt.

Plaintiff cannot rely alone on the language of New York Criminal Procedure Law § 160.60 to argue otherwise.  The certificate of disposition cites New York Criminal Procedure Law § 160.60, which provides: "Upon the termination of a criminal action or proceeding against a person in favor of such person, the arrest and prosecution shall be deemed a nullity and the accused shall be restored, in contemplation of law, to the status he occupied before the arrest and prosecution."  N.Y. Crim. P. L. § 160.60.  But although that law refers to "the termination . . . in favor of such person," even if Plaintiff "is entitled to the full benefit of the record sealing and expunging provisions that attend an acquittal, with the effect that charge is treated as though it never had been brought," "[n]evertheless, such a termination extinguishes a malicious prosecution claim."  *Rothstein v. Carriere*, 373 F.3d 275, 287 (2d Cir. 2004); *see also Smith-Hunter v. Harvey*, 734 N.E.2d 750, 753 (2000) ("Indeed, it is hornbook law that 'where charges are withdrawn or the prosecution is terminated by reason of a compromise into which [the accused] has entered voluntarily, there is no sufficient termination in favor of the accused.'") (quoting Prosser and Keeton, Torts § 119, at 875 [5th ed.]).  The language of New York Criminal Procedure Law § 160.60 thus does not change the result here because, as discussed, Plaintiff's dismissal was due to a "compromise" in which his charges would be dismissed upon his satisfactory completion of the drug treatment program.  *See, e.g.*, *Rothstein*, 373 F.3d at 287 ("In order for the compromise of a criminal case to defeat a subsequent malicious prosecution claim, it is not required that the defendant in the criminal case admit his guilt [but]. . . . '[h]aving bought peace the accused may not thereafter assert that the proceedings have terminated in his favor.'") (quoting Restatement (Second) of Torts § 660, cmt. c).

Nor does the fact that the certificate of disposition cites New York Criminal Procedure Law § 160.50, which is titled "Order upon termination of criminal action in favor of the

accused," save Plaintiff's case.  N.Y. Crim. P. Law. § 160.50.  That law "bestows a general

record sealing requirement for designated proceedings under the CPL upon the 'termination of a

criminal action or proceeding . . . in [a defendant's] favor.'"  *Matter of James Q.*, 120 N.E.3d

358, 363 (2019) (quoting N.Y. Crim. P. Law. § 160.50(1)); *see also People v. Anonymous*, 145

N.E.3d 924, 927 (2020) ("[T]he Legislature's objective in enacting CPL 160.50" was to "lessen

the adverse consequences of unsuccessful criminal prosecutions by limiting access to official

records and papers in criminal proceedings which terminate in favor of the accused") (internal

citations and quotation marks omitted).  Indeed, the Second Circuit considered and rejected the

argument that New York Criminal Procedure Law § 160.50 meant to apply to anything other

than the sealing of records, reasoning:

> Section 160.50, by classifying a § 170.50 dismissal as 'in favor' of the defendant
> and permitting the arrest and prosecution to be deemed a nullity, merely confirms
> the 'special break for first offenders' conferred by § 170.55 itself.  By erasing the
> stigma that might otherwise be borne by the defendant as a result of the prosecution,
> the statute does not authorize a finding of "not guilty;" it simply permits the court
> to expunge the record against him, just as is authorized by state and federal laws
> with respect to juvenile delinquents or youthful offenders who have committed
> criminal acts.

*Singleton*, 632 F.2d at 194.  The same conclusion follows here where Plaintiff's certificate of

disposition reflects the identical language.[15]

_____

[15] Plaintiff cites several cases for the proposition that a case dismissed pursuant to New York
Criminal Procedure Law §§ 160.60 and 160.50(1) meets the favorable termination requirement.
But the cases cited by Plaintiff discuss only the issue of sealing records or are otherwise
inapplicable.  *See People v. Hurd*, 498 N.Y.S.2d 94, 95 (Crim. Ct. 1986) (discussing whether a
criminal court may order the unsealing of records under N.Y. Crim. P. L. § 160.60); *People v.
White*, 436 N.E.2d 507, 508 (1982) (addressing the "question of the circumstances in which the
presence of counsel who has entered a criminal case may be waived by a defendant in the
absence of counsel"); *Brown v. Passidomo*, 486 N.Y.S.2d 986, 991 (Sup. Ct. 1985) (discussing
whether the dissemination of plaintiff's vehicle operating record violated N.Y. Crim. P. L.
§§ 160.50 and 160.60); *Miller v. Waters*, 853 N.Y.S.2d 183, 185 (3d Dep't 2008) (discussing
whether the county court "was authorized to correct petitioner's erroneous filing of the papers in
the wrong clerk's office"); *Barnhart v. Cataldo*, 781 N.Y.S.2d 738 (1st Dep't 2004) (challenging
sentencing court's unsealing of prior criminal records), *rev'd sub nom. Katherine B. v. Cataldo*,

### 2.      Cruel and Unusual Punishment

Construing the Amended Complaint liberally, Plaintiff's Eighth Amendment claim is in two parts.  He alleges that, prior to his arraignment on February 28, 2015, he was given only aspirin for his back pain, and prior to his guilty plea on September 4, 2015 (or March 27, 2015 as Plaintiff alleges), he experienced several altercations in the housing unit to which he was assigned, specifically he was strip-searched in front of other men and thrown against walls.  AC ¶¶ 13-14, 17-18, 31(A).  After his guilty plea, and when he was at the veterans facility at the Samaritan Day Top Village, he was forced to live in quarters that aggravated his medical condition and the program failed to accommodate the hospital's order for his care.  *Id.* ¶¶ 22-23. Neither part states a claim for relief against Simonovic or Cintron.  This section discusses the first part.  Plaintiff's claim to have suffered cruel and unusual punishment after his guilty plea is discussed below in connection with the Samaritan Day Top Village.

Plaintiff's allegations about his treatment before his guilty plea do not raise a claim under the Eighth Amendment because the "Cruel and Unusual Punishments Clause 'was designed to protect those convicted of crimes,' . . . and consequently the Clause applies 'only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions.'"  *Whitley v. Albers*, 475 U.S. 312, 318 (1986) (quoting *Ingraham v. Wright*, 430 U.S. 651, 664, 671 n.40 (1977)).  Instead, "[a] pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment."

---

833 N.E.2d 698 (2005); *Anonymous*, 145 N.E.3d at 927 (holding that the lower court "erroneously granted the prosecutor's motion to unseal the records of the proceeding terminated by acquittal and improperly considered defendant's trial testimony in deciding not to adhere to the promised sentence" and "remit[ting] for defendant's resentencing without reference to the contents of the sealed records").

*Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017); *see Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) ("[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment."); *Sanchez v. City of New York*, 2020 WL 5238604, at *5 (S.D.N.Y. Feb. 11, 2020) ("Because Plaintiff was a pretrial detainee when the incidents in the complaint occurred, the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight Amendment applies to his claims.").

### 3. Fourteenth Amendment

Should Plaintiff's allegations during pre-trial detention be construed as claims under the Fourteenth Amendment, however, they still do not state a claim. In addition, as discussed, these allegations are time-barred because they occurred more than three years before the filing of this action and Plaintiff has not adequately alleged a basis for equitable tolling.

### a. Deliberate Indifference

The Court liberally construes Plaintiff's claims regarding his medical treatment during pre-trial detention to assert a claim for deliberate indifference under the Fourteenth Amendment. To assert a claim for deliberate indifference to a serious medical need, a plaintiff "must allege both (a) conditions that objectively 'pose an unreasonable risk of serious damage to . . . health'; and (b) that the 'defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety.'" *Vega v. Semple*, 963 F.3d 259, 273-74 (2d Cir. 2020) (quoting *Darnell*, 849 F.3d at 30, 35).

Plaintiff has not demonstrated that his back injury presented a "condition of urgency, one that may produce death, degeneration, or extreme pain." *Lloyd v. Lee*, 570 F. Supp. 2d 556, 566 (S.D.N.Y. 2008) (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)). Nor has he

demonstrated "that the alleged deprivation of adequate medical care was 'sufficiently serious" or
that "defendant[s] acted with 'deliberate indifference' to plaintiff's serious medical need." *Tate
v. City of New York*, 2017 WL 10186809, at *10 (E.D.N.Y. Sept. 29, 2017).  He alleges that
when he complained about his back hurting, Plaintiff was offered the option of going to the
hospital for his back condition but declined and received aspirin instead.  AC ¶¶ 13, 14.  He also
received Motrin for his pain until he could have an MRI done.  *Id.* ¶ 16.  These allegations do not
demonstrate that Plaintiff was treated with deliberate indifference; in fact, it appears the
opposite—that he was given medication in the interim.  *See Lloyd v. City of New York*, 246 F.
Supp. 3d 704, 719 (S.D.N.Y. 2017) (dismissing deliberate indifference claim where defendants
"repeatedly offered [plaintiff] medical assistance"); *Dzwonczyk v. Syracuse City Police Dep't*,
710 F. Supp. 2d 248, 268 (N.D.N.Y. 2008) (plaintiff "failed to state such a claim because he
admits that his medical concerns were in fact addressed by someone"); *see also Chance v.
Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) ("It is well-established that mere disagreement over
the proper treatment does not create a constitutional claim. So long as the treatment given is
adequate, the fact that a prisoner might prefer a different treatment does not give rise to [a] . . .
violation.").  Plaintiff also does not allege that his injury was made worse by delay in treatment
or that such delay exposed Plaintiff to risk of future harm.  *See Washington v. O'Mahony*, 2020
WL 1285851, at *5 (S.D.N.Y. Mar. 18, 2020); *see also Smith v. Carpenter*, 316 F.3d 178,
185-86 (2d Cir. 2003) (where the basis for the claim "is a temporary delay or interruption in the
provision of otherwise adequate medical treatment," the court analyzes whether the delay itself
created a "risk of harm").

### b.  Excessive Force

Plaintiff's allegations about being thrown against a wall by a patrol unit during his
pre-trial detention also fail to state a claim for two reasons.  First, Plaintiff does not allege

Simonovic or Cintron were involved in this incident. *See Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (The "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983"); *McCoy v. Goord*, 255 F. Supp. 2d 233, 258 (S.D.N.Y. 2003) ("[W]here the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted."). That reason alone is sufficient to dismiss the claim against them. Second, and in addition, Plaintiff has not pleaded any facts about the incident to plead a violation of the Fourteenth Amendment. *See Ali v. Szabo*, 81 F. Supp. 2d 447, 454-55 (S.D.N.Y. 2000) ("In order to state a claim for excessive force under the Fourteenth Amendment, the governmental act complained of must be such an abuse of power as to shock the conscience in a constitutional sense."). Significantly, and as previously discussed, these claims are time-barred.

### c.    Invasive Search

Like Plaintiff's allegations regarding excessive force while being detained, Plaintiff has similarly failed to allege Simonovic or Cintron's personal involvement in his strip search. In addition, Plaintiff does not allege that the strip search during his pre-trial detention was unconstitutional. "The general practice of strip searching a detainee during housing searches and on the way to and from court appearances is not unconstitutional, even if the detainee is accused only of a misdemeanor." *Thompson v. City of New York*, 2017 WL 1929552, at *2 (S.D.N.Y. May 9, 2017); *see also Jean-Laurent v. Wilkerson*, 438 F. Supp. 2d 318, 323 (S.D.N.Y. 2006), *aff'd*, 461 F. App'x 18 (2d Cir. 2012) ("Generally, strip searches have been upheld as a reasonable security measure within a correctional facility even in the absence of probable cause as long as they are related to a legitimate penological goal."). To the extent Plaintiff alleges a claim based on the strip search, he has failed to plead any allegations that support his claim. *See*

*Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 326 (2012); *Harris v. Miller,* 818 F.3d 49, 57-58, 63 (2d Cir. 2016) (referring to factors in *Bell v. Wolfish*, 441 U.S. 520, 559 (1979) that balance the "need for the particular search against the invasion of personal rights": "[1] the scope of the particular intrusion, [2] the manner in which it is conducted, [3] the justification for initiating it, and [4] the place in which it is conducted."); *see also Simms v. Durant*, 2021 WL 293567, at *5 (D. Conn. Jan. 27, 2021) (dismissing claim where plaintiff had "not alleged any facts indicating that he was subjected to unreasonable strip searches by these defendants").

### C.      Claims Related to Samaritan Day Top Village

Plaintiff's claims with respect to the Samaritan Day Top Village similarly fail to state a claim against Simonovic or Cintron because they do not allege any conduct by Simonovic or Cintron in connection with the conduct about which Plaintiff complains.  "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  *Shomo*, 579 F.3d at 184 (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)); *see Victory*, 814 F.3d at 67.  A plaintiff must "plead that each Government-official defendant, through the official's own actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.  Plaintiff alleges that Simonovic and Cintron each were police officers stationed in the Bronx, New York.  AC ¶¶ 1, 2.  The injuries he suffered after his guilty plea were at the Samaritan Day Top Village program in Manhattan after he pleaded guilty in March 2015.  *Id.* ¶ 21.  He does not allege that either officer had any involvement in his case, much less involvement at the program, after Plaintiff's February 2015 arrest.

The Court does not address whether Plaintiff can state a claim against Samaritan Day Top Village for the alleged injuries he sustained while under its care.  *See id.* ¶¶ 22-23, 25.

### D.      Leave to Amend

In this Circuit, a *pro se* complaint "should not [be] dismissed without granting leave at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shomo*, 579 F.3d at 182 (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)); *see also Shabazz v. Bezio*, 511 F. App'x 28, 31 (2d Cir. 2013).  But "[a]lthough district judges should, as a general matter, liberally permit pro se litigants to amend their pleadings, leave to amend need not be granted when amendment would be futile." *Terry v. Inc. Vill. of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016).

Under these principles, all of Plaintiff's Section 1983 claims are dismissed against Simonovic and Cintron with prejudice.  They are time-barred, barred under *Heck*, or lack personal involvement by these Defendants, and the Amended Complaint provides no indication that there are facts that could cure those deficiencies.  *See, e.g.*, *Kevilly v. New York*, 410 F. App'x 371, 375 (2d Cir. 2010) (affirming denial of leave to amend because plaintiff's "claims in his original complaint were either barred under *Heck* or untimely"); *Forbes*, 2016 WL 6269602, at *6 (declining to grant leave to replead "claims for false arrest, excessive force, or unlawful search . . . given that they are untimely, and any amendment would therefore be futile"); *Keitt v. New York City*, 882 F. Supp. 2d 412, 426 (S.D.N.Y. Sept. 29, 2011) ("All of [plaintiff's] claims against the City Defendants are time-barred and thus an amendment with respect to these claims would be futile.").

Plaintiff's claim based on injuries allegedly incurred while at Samaritan Day Top Village are also dismissed against Simonovic and Cintron but without prejudice.  Plaintiff is granted leave to amend his complaint for the second time to add specific allegations about all relevant events and facts that support Plaintiff's case, including but not limited to (1) the names of the proper defendants, (2) addresses for such defendants, (3) specific allegations including what each

defendant did or failed to do, (4) the dates and times of each relevant event or fact while at Samaritan Day Top Village, and (5) the relief sought by Plaintiff.[16]

## CONCLUSION

Defendants' motion to dismiss the Amended Complaint against Simonovic and Cintron is GRANTED in accordance with this Opinion and Order.  Although the claims against Simonovic and Cintron are dismissed from the action, the claims against Johnson remain.

If Plaintiff intends to file an amended complaint, he shall submit such amended complaint by mailing it on or before April 23, 2021 to the Pro Se Office.

The Clerk of Court is respectfully directed to terminate Simonovic and Cintron as Defendants, to close Dkt. No. 35, and to mail a copy of this Opinion and Order to Plaintiff.

SO ORDERED.

Dated: February 23, 2021
      New York, New York

                                    LEWIS J. LIMAN
                           United States District Judge

---

[16] However, should Plaintiff seek to add a new claim or party after the statute of limitations period has expired, he must meet the requirements of Rule 15(c) of the Federal Rules of Civil Procedure.